IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02130-PAB

EVAN MICHAEL PALAN,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,[1]

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Evan Michael Palan on August 21, 2018.  Plaintiff seeks review of the final decision of defendant Andrew M. Saul (the "Commissioner") denying his claim for insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

**I. BACKGROUND**

On December 7, 2016, plaintiff applied for social security benefits under Title II of the Act.  R. at 163.  Plaintiff alleged a disability onset date of September 15, 2016.

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit.  *See* Fed. R. Civ. P. 25(d).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

R. at 195. After an initial denial of plaintiff's claim, R. at 97-99, plaintiff was granted a hearing before an administrative law judge ("ALJ"). R. at 101-03. A hearing was held on March 7, 2018. R. at 33. On March 26, 2018, the ALJ denied plaintiff's claim for disability benefits. R. at 27.

The ALJ found that plaintiff met the insured status requirements of the Act through March 31, 2020 and had not engaged in substantial gainful activity since the alleged disability onset date. R. at 14. The ALJ also determined that plaintiff had the following impairments: relapsing and remitting multiple sclerosis with a history of optic neuritis; degenerative disc disease of the lumbar spine; a history of multiple concussions; mild neurocognitive disorder; depression; and anxiety. R. at 15. The ALJ concluded that these impairments were "severe" and that the medical evidence supported a finding that these impairments would "limit, at least minimally, the claimant's ability to perform work related activities." *Id.* However, the ALJ also found that these impairments, alone or in combination, did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. R. at 16. Ultimately, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> can lift and carry up to twenty pounds occasionally and ten pounds frequently, can stand or walk for six hours total, and can sit for six hours total in an eight-hour workday with normal breaks . . . can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl . . . can have no exposure to extreme heat . . . should have no use of moving[] hazardous machinery . . . can have no exposure to unprotected heights . . . can have only

occasional interaction with the public and coworkers.

R. at 18. The ALJ determined that plaintiff "is limited to unskilled work (at all reasoning levels appropriate to that work)." *Id.*

Plaintiff does not have past relevant work. R. at 26. However, the ALJ concluded that jobs exist in the national economy in significant numbers that plaintiff could perform, such as an assembler of small products, a mail room clerk, or an office helper. R. at 26-27.

On July 2, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision. R. at 1. Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in evaluating and weighing the medical evidence because she failed to comply with the "treating physician rule." Docket No. 16 at 4. Specifically, plaintiff contends that the ALJ erred in according "little weight" to

the opinion of treating doctor Dr. John Corboy. *Id.* at 6. Defendant contends that (1) Dr. Corboy is not a treating physician and was therefore not entitled to controlling weight (2) Dr. Corboy's opinion was not entitled to much weight because it was conclusory and merely adopted other providers' opinions and did not set out his own opinions. Docket No. 17 at 10-11.

### A. The Treating Physician Rule

The ALJ must give consideration to all of the medical opinions in the record. *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). The ALJ must also explain the weight she assigns to such opinions. *Id.* (citations omitted). The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship.[3] 20 C.F.R. § 404.1527(c)(2).

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[3] In 2017, the rules were changed to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c. Because plaintiff's claim was filed before March 27, 2017, the former regulations apply. *See* 20 C.F.R. § 404.1527 ("Generally, we give more weight to medical opinions from . . . treating sources.").

and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry. In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining the proper weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted).

### B. Dr. Corboy

Plaintiff contends that the ALJ failed to follow the treating physician rule when giving Dr. Corboy's opinion little weight. Docket No. 16 at 4-6. Defendant contends that Dr. Corboy cannot be deemed a "treating source" because he only examined plaintiff once. Docket No. 17 at 10. In her decision, the ALJ did not expressly refer to Dr. Corboy as a treating source. *See* R. at 25.

A "treating source" is defined as the claimant's "own acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). "This requires a relationship of both duration and frequency." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). "[T]he assumption that the opinions of a treating physician warrant greater credit than the opinions of [other physicians] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003). Plaintiff argues that Dr. Corboy is a treating physician because "while he just recently became [plaintiff's] neurologist, he had access to the entire medical records of the Center where claimant had been a patient since early 2016." Docket No. 22 at 3.

The Court agrees with defendant that Dr. Corboy cannot be considered a "treating source" under the regulations. The record demonstrates that Dr. Corboy saw plaintiff for the first time in November 2017. R. at 1001. There is no indication, however, that Dr. Corboy examined plaintiff from that first visit until the time that he

8

wrote his opinion letter in February 2018. *Id.* Even if Dr. Corboy had access to the records of other providers at the medical center where Dr. Corboy was employed, mere access to medical records does not make a physician a treating source. *See Doyal*, 331 F.3d at 762 (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.") (emphasis omitted)). Thus, Dr. Corboy was not a treating physician under the regulations and the ALJ was not required to go through the two-step analysis required by 20 C.F.R. § 404.1527.

To the extent that plaintiff's brief may be read as an argument that Dr. Corboy's opinion was nevertheless entitled to more than "little weight," *see* Docket No. 16 at 7, the Court finds that the ALJ provided sufficient support for giving little weight to Dr. Corboy's opinion. In his opinion letter, Dr. Corboy wrote two paragraphs describing plaintiff's physical condition, setting out the effect of multiple sclerosis on plaintiff's brain and plaintiff's affliction with Uhthoff's phenomenon,[4] as well as plaintiff's chronic pain. R. at 1001. Dr. Corboy then stated that he "agree[d] with the limitations identified by Dr. Ginsburg, Ms. Couch, Mr. Westra, and Dr. Morgan." R. at 1002. Dr. Corboy did not set out any personal opinions on plaintiff's physical limitations beyond incorporating

---

[4]Uhthoff's phenomenon is "a temporary worsening of neurological symptoms[] when [the patient] becomes overheated." R. at 1001. Dr. Corboy found that plaintiff experiences worsened balance and blurry vision when overheated. *Id.*

the limitations endorsed by the other physicians, nor did Dr. Corboy link any of the physical afflictions he found plaintiff suffers to the limitations set out by the other physicians.  *See id.*

The ALJ determined that "[t]he probative value of Dr. Corboy's opinions are limited by their conclusive nature and his only short treatment relationship."  R. at 25.  Indeed, as set out above, Dr. Corboy's treatment relationship with plaintiff was limited in both duration and frequency and provided little support for his opinion agreeing with the limitations set forth by other doctors.  The ALJ also found that, with regard to the limitations and opinions that Dr. Corboy relied upon, plaintiff's physical examinations and his daily activities demonstrated greater functional abilities than identified in those opinions.  *Id.*  To support this finding, the ALJ incorporated by reference her reasoning for discounting those opinions and cited eight exhibits from the record.  *Id.*; *see also* R. at 24-25.  These exhibits demonstrate, among other things, that plaintiff refereed dozens of hockey games from May 2016 to November 2017, R. at 179-193, and had normal gait and station in January and November 2017.  R. at 925, 956.  The ALJ also cited Dr. Corboy's report from his November 2017 examination of plaintiff stating that plaintiff had normal casual and tandem gaits and was able to walk on his heels and toes.  R. at 798.  Thus, the ALJ provided a sufficient explanation for affording Dr. Corboy's opinion little weight.  The Court finds no error in the ALJ's weighing of Dr. Corboy's opinion.  *See Endriss v. Astrue*, 506 F. App'x 772, 775 (10th Cir. 2012) (finding that the ALJ adequately explained weight given to medical evidence when ALJ cited to a number of record exhibits and "just a few pages earlier" had made

"observations about the evidence in those exhibits"); *see also Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (medical opinion may be rejected "if it is brief, conclusory, and unsupported by medical evidence.").

Plaintiff further argues that the ALJ erred when she stated that "Dr. Corboy noted nonsensically that he would defer to the claimant's psychiatrist regarding limitations for degenerative disc disease," R. at 25, because the ALJ misread "phsyiatrist" as "psychiatrist." Docket No. 16 at 6. Defendant acknowledges that the ALJ misread the record, but argues that any error was harmless. Docket No. 17 at 11 n.5. The Court agrees. Even without the mistaken reference Dr. Corboy's purported reliance on plaintiff's psychiatrist regarding physical limitations, the ALJ's three other reasons for affording Dr. Corboy's opinion little weight sufficiently explained her decision. Any error made by the ALJ was therefore harmless. *See Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 517 (S.D. Tex. 2003) ("[E]ven when an ALJ patently misreads a portion of the record, such misreading may be harmless if the record nonetheless supports the ALJ's decision with substantial evidence."); *Coates v. Colvin*, 2013 WL 3148222, at *4 (N.D.N.Y. June 19, 2013) ("While it appears that the ALJ misread the record evidence . . . it cannot be said that the ALJ's credibility determination was based largely on factual errors such that remand would be necessary."). Because the ALJ's error was harmless, it does not warrant remand.

### C.  Other Arguments

Plaintiff raises brief arguments about the weight afforded to other source opinions. Although plaintiff generally claims that the ALJ's analysis was improper, *see*

Docket No 16 at 8, he only claims that the ALJ made specific errors with respect to the opinions of Dr. Carol Phelps, Dr. Kyle Morgan, and occupational therapist Kris Couch. *Id.* at 8-9. The Court finds that each of these arguments is without merit.

### 1. *Dr. Phelps*

Plaintiff contends that the ALJ erred in giving the opinion of Dr. Carol Phelps "great weight" because, "[o]ther than [a] short platitudinal explanation, there is no rationale provided" for the ALJ's weight determination. Docket No. 16 at 8. The Court disagrees. Dr. Phelps opined that plaintiff is impaired by his multiple sclerosis and spine disorder and would be limited to light work. R. at 86. The ALJ set out the opinions to which she assigned great weight and explained Dr. Phelps' bases for those opinions. R. at 24. The ALJ then explained that Dr. Phelps' opinions were "generally consistent with the medical evidence of record," setting out seven areas in which Dr. Phelps' opinion was consistent with the medical evidence. *Id.* For example, the ALJ cited evidence demonstrating that plaintiff had a normal gait and station, could walk on his toes and his heels, had normal coordination and normal and symmetric reflexes, and full muscle strength. *Id.* The ALJ provided sufficient support for her weighing of Dr. Phelps' opinion. *Krauser v. Astrue*, 638 F.3d 1324, 1330-31 (10th Cir. 2011) ("[T]he ALJ's findings must be sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight." (internal quotation marks omitted)). Moreover, plaintiff has not pointed to any specific evidence that would overwhelm the evidence relied upon by the ALJ. *See Musgrave*, 966 F.2d at 1374. Thus, the Court finds that the ALJ's decision to afford Dr.

Phelps' opinion great weight is supported by substantial evidence.

### 2. Dr. Morgan

Plaintiff also argues that the ALJ erred in finding that Dr. Kyle Morgan's opinions, which set out his beliefs on plaintiff's physical functional limitations, were inconsistent with plaintiff's activities of caring for his children and refereeing several hockey games per week through 2017. Docket No. 16 at 9. Dr. Morgan is a treating physician, R. at 25, and the ALJ was thus required to perform a two-step inquiry to determine whether Dr. Morgan's opinion was entitled to controlling weight. Although the ALJ did not explicitly decline to give Dr. Morgan's opinion controlling weight, she implicitly did so, and because the court "can tell from the decision that the ALJ declined to give controlling weight to [Dr. Morgan's] opinion, [the Court] will not reverse on this ground." *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

"Even if a treating opinion is not given controlling weight, it is still entitled to deference," *Krauser*, 638 F.3d at 1330, and the ALJ must "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301.

In August 2017, Dr. Morgan filled out a physical functional capacity form to indicate that plaintiff could, at one time, sit for one hour and 30 minutes, stand for 20 minutes, and walk for one hour. R. at 542. He also indicated that plaintiff could only sit, stand, or walk for one minute total in an eight-hour workday. *Id.* Defendant suggests that Dr. Morgan accidentally switched these answers and intended to opine that plaintiff could walk, stand, or sit for one minute at a time and could sit for one hour

and 30 minutes, stand for 20 minutes, and walk for one hour total in an eight-hour work day. Docket No. 17 at 4 n.2. The ALJ, however, incorporated Dr. Morgan's opinion as written. R. at 25.

The Court finds that, either way that Dr. Morgan's opinion is read, the ALJ considered the appropriate factors and gave good reasons for affording Dr. Morgan's opinion little weight and there is substantial evidence supporting the ALJ's weight determination. If Dr. Morgan intended to opine that plaintiff could only sit, stand, or walk for one minute in an eight-hour workday, this is belied by the evidence that plaintiff was, at the time, refereeing hockey games weekly, which required him to be on ice skates for 20 minutes before taking a break. R. at 63. Further, if Dr. Morgan intended to indicate a belief that plaintiff could only stand for 20 minutes total in an eight-hour workday, this is also contradicted by plaintiff's then-current refereeing schedule, which required him to be standing or skating for at least 60 minutes per game. R. at 63. Moreover, plaintiff sometimes refereed more than one game per day. *See, e.g.*, R. at 192 (plaintiff scheduled to referee three hockey games on November 19, 2017). Plaintiff's suggestion that the ALJ's decision was incorrect because plaintiff testified at the hearing that "he received a break every 20 minutes during a game . . . [and] longer breaks between games," Docket No. 16 at 9, essentially asks the Court to reweigh the evidence. The Court's role on appeal is not to reweigh the evidence, but only to determine whether the ALJ applied the correct law and supported her decisions by substantial evidence. *See Flaherty*, 515 F.3d at 1070. Here, the Court finds that the ALJ supported her determination to afford Dr. Morgan's opinion little weight with

substantial evidence.

### 3. Ms. Couch

Finally, plaintiff asserts that the ALJ's evaluation of occupational therapist Kris Couch is "just a generalization that does not provide this court with sufficient basis for review." Docket No. 16 at 8. The Court disagrees. The ALJ set out, in detail, the opinions of Ms. Couch, which included opinions that plaintiff would experience problems in concentration due to his recurring pain, had problems with balance, and could stand for 15 minutes. R. at 25. Further, the ALJ considered that Ms. Couch's opinions were based on "what appears to be a thorough in-person examination." *Id.* However, the ALJ found that other medical examinations in the record "confirm[ed] greater abilities" than what had been accounted for by Ms. Couch. *Id.* Specifically, the ALJ cited six medical examinations in support of her conclusion. *Id.* (citing R. at 920, 925, 956 (stating that plaintiff had normal gait and station); R. at 798 (stating that plaintiff is able to walk on heels and toes and has normal tandem gait); R. at 770 (finding that plaintiff had normal coordination); R. at 714 (stating that plaintiff had normal gait and normal motor strength and tone); R. at 390 (finding that plaintiff had normal reflexes, sensation, and strength)). The ALJ also stated that plaintiff's daily activities, set out above, were inconsistent with the suggested limitations, as he was able to referee multiple hockey games in a day for several months after Ms. Couch rendered her opinion. The Court finds that the ALJ's decision affording Ms. Couch "partial weight" is supported by substantial evidence. *Krauser*, 638 F.3d at 1330-31; *cf. Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished) (finding that

ALJ erred in rejecting medical opinion when the ALJ did not cite inconsistent exam findings or explain how the opinion was inconsistent).

Finding that plaintiff has not demonstrated an error in the ALJ's decision, the Court will affirm.[5]

## V. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner finding that plaintiff is not disabled is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED June 1, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

---

[5] Plaintiff also sets forth an argument in his reply brief that the ALJ wrongly ignored the vocational expert's findings.  Docket No. 22 at 4.  The Court will not consider an argument raised for the first time in a reply brief.  *Simmons v. Colvin*, 635 F. App'x 512, 514 n.2 (10th Cir. 2015) (unpublished) (stating that general rule that court will not consider arguments raised for the first time in a reply brief also applies in social security cases).